## AMERICAN BANK OF COMMERCE & TRUST CO. v. CITIZENS' GUARANTY STATE BANK OF LINDALE et al.   (No. 2651.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1922. Rehearing Denied Jan. 4, 1923.

**Banks and Banking** &—189—**Holder of draft obtained by fraud on third parties held entitled to sue bank issuing draft.**

Where a feed company was indebted to a milling company, which agreed to allow the feed company to sell a carload of feed products to its customers, taking the customers' checks, for which defendant bank issued a draft and delivered it to the milling company, which thereafter refused to allow the feed company to get possession of the feed products so sold, and defendant bank, at the request of such customers, notified the drawee bank not to pay the draft, and drawee bank complied with such request, the milling company or its indorsee could sue the bank on the draft, and the bank could not defend on the ground that the money paid for the draft was obtained by fraud; the remedy available to the customers of the feed company or their assignee being a recovery in suit against the proper parties of damages for the fraud practiced on them.

Error from Smith County Court; D. R. Pendleton, Judge.

Action by the American Bank of Commerce & Trust Company against the Citizens' Guaranty State Bank of Lindale and another, in which R. F. Yarbrough intervened. A judgment adverse to plaintiff was entered, and it brings error. Affirmed in part, and in part reversed and rendered.

This was a suit by plaintiff in error, a corporation, against the defendants in error, American National Bank of Dallas, Tex., and Citizens' Guaranty State Bank of Lindale, Tex., in which the defendant in error R. F. Yarbrough intervened. The recovery sought by plaintiff in error against the Lindale and Dallas banks was on a draft for $831 drawn by the Lindale bank May 19, 1921, on the Dallas bank in favor of J. F. Weinmann (Milling) Company, a corporation under the laws of Arkansas. The domicile and place of business of both the plaintiff in error bank and the milling company were in Little Rock, Ark., while the domicile and place of business of the Citizens' Guaranty State Bank were in Lindale, Tex. The trial court found the facts of the case to be as follows: The milling company agreed with Pruitt's Feed Store to sell it feed products in carload lots and to ship same to it at Lindale, where the feed store was engaged in business. When it made a shipment the milling company was to draw a draft on the feed store for the sum the latter was to pay for same. The feed store was to accept the draft when presented, and was to pay same within 30 days from the day the car was delivered to it. In conformity to the agreement the milling company shipped a carload of feed products, and same was delivered to the feed store March 28, 1921. At the time it made the shipment the milling company drew a draft on the feed store (which the latter accepted) for $831, the amount the feed store was to pay for the products. About May 19, 1921, the milling company shipped another carload of feed products to Lindale. While the intention of the milling company was that this car should be delivered to the feed store under the agreement between them, it was not consigned to the feed store, but to one Jeter, who was the agent of the milling company. The $831 draft covering the purchase price of the carload of feed products delivered to the feed store March 28, 1921, had not been paid when the second carload reached Lindale, and the milling company was not willing to deliver same to the feed store until the draft was paid. The feed store was insolvent, and could not pay said draft. Thereupon it was agreed between Jeter and the feed store that the latter might sell the contents of the second car to merchants in Lindale and in that way obtain the money necessary to pay the draft covering the price of the contents of the first car. It was further agreed that if the draft was paid in that way the second carload of feed products would be delivered to the feed store. The feed store sold the contents of the second car accordingly, and then tendered Jeter checks the merchants had given it for purchases they had made of the contents of the car, amounting to $831, in payment of said draft. Jeter refused to take the checks in payment of the draft, and requested the feed store "to get exchange" from the Lindale bank for the amount of said draft. Thereupon the feed store presented the checks to said Lindale bank, which accepted same and drew its draft (the one sued upon) on the Dallas bank for $831 in favor of the milling company. This draft was delivered to the milling company on the day it was drawn, and on the next day thereafter was deposited by it in the plaintiff in error bank, which credited the account the milling company had with it with the amount thereof, "in the ordinary way." After obtaining the draft sued upon in the manner stated, the milling company refused to deliver the second carload of feed products to the feed store, and sold same to other parties. Thereupon the Lindale bank, at the request of the merchants referred to, notified the Dallas bank not to pay the draft sued upon when same was presented to it, and the latter bank complied with the request. The draft was protested for nonpayment, and notice thereof was given to the parties concerned on May 24, 1921. The merchants referred

to purchased the contents of the second car, and paid for same as stated on the faith of the agreement that same would be delivered to the feed store when the $831 was paid to the milling company, and would not have purchased same but for the information they had from the feed store about said agreement; and they had been informed by one Stanley; whom the milling company had sent to Lindale to collect the $831 the feed store owed it, that the milling company was shipping carload lots of feed to the feed store, and was giving it 30 days to pay for same, and "allowing the feed store to sell the products of the cars in order to have money to remit." As stated above, the feed store was insolvent at the time the transactions stated occurred, and both Jeter and the merchants referred to knew it was insolvent. At the time the draft sued on was deposited with plaintiff in error by the milling company the latter had $4,000 to its credit with the former, and every day thereafter had more than $831 to its credit with plaintiff in error. The milling company and its agent, the trial court found, practiced fraud and deceit "in obtaining [quoting] money to pay their former indebtedness by agreeing with Pruitt's Feed Store that it might sell the contents of the second car in order to get money to pay the acceptance past due, and after obtaining the money in this manner refused to deliver the car of feed." Defendant in error Yarbrough was one of the Lindale merchants who purchased feed products in the second car, and by assignment acquired such rights as the other merchants who purchased had to maintain a suit against the other parties. The trial court's "conclusions of law" on the facts stated were as follows:

"I find that Weinmann Milling Company, having obtained this exchange in the manner it did, same being a fraud on the parties who bought the contents of the second car and whose money represented this exchange, would not be entitled to recover from the bank, and the said exchange having been deposited by the Weinmann Milling Company in plaintiff bank, and having been duly and legally protested, all parties having notice of said protest, and the plaintiff bank having in its possession and on deposit to the credit of the Weinmann Milling Company sufficient funds to pay itself after the notice of protest, and every day since said time up to and including the day of filing this suit, and having failed to appropriate the money to the payment of this amount, and being a foreign corporation, and the Weinmann Milling Company being one of its depositors in the same state, town, and city, and being also a foreign corporation, the said bank plaintiff ought not in equity and good conscience give unto this jurisdiction and help to perpetrate a fraud upon the defendant by maintaining this suit in this state and allowing by this the Weinmann Milling Company to take advantage of the depositors of the defendant bank here, and therefore the plaintiff ought not to recover."

Having reached the conclusion indicated by the excerpt from his findings set out above, the trial court rendered judgment denying plaintiff in error a recovery of anything against either the Dallas or the Lindale bank, awarding defendant in error Yarbrough a recovery of the $831 "held by said Citizens' Guaranty State Bank," and directing the last-named bank to pay over said sum to said Yarbrough. Thereupon plaintiff in error prosecuted this writ of error.

Butler, Price & Maynor, of Tyler, for plaintiff in error.

Bulloch, Ramey & Storey, of Tyler, and J. A. Mallory, of Lindale, for defendants in error.

WILLSON, C. J. (after stating the facts as above). We do not agree with the trial court in the conclusion he reached that the milling company could not have maintained a suit against the Lindale bank on the draft sued upon had it not assigned same to plaintiff in error, and therefore sustain the contention presented by plaintiff in error that that court erred (1) in his conclusions of law, (2) in rendering judgment for Yarbrough, and (3) in refusing to render judgment for it. We think the milling company could have maintained such a suit, and that the Lindale bank could not have defended on the ground that the money paid it for the draft was obtained by the feed store by means of fraud practiced by the milling company on the merchants. Only the merchants who were defrauded could complain of that; and in a suit against the Lindale bank alone they could not have recovered back the amount of their checks on that ground, for it was not at fault in the matter. If the milling company, had it not assigned the draft, and sued on it, should not have been denied a recovery against the Lindale bank, because of the fraud it practiced on the merchants, certainly plaintiff in error should not for that reason have been denied the recovery it sought against that bank.

The remedy available to the merchants, or their assignee, we think was a recovery (in a suit against the proper parties) of damages for the fraud practiced on them. Plainly, we think, neither the merchants nor their assignee were entitled, as the trial court determined they were, by intervening in this suit, in which only plaintiff in error, the Dallas bank, and the Lindale bank were parties, to in effect rescind the contract between the Lindale bank, the milling company, and plaintiff in error evidenced by the draft and indorsement thereon sued upon, and to rescind the contracts between the merchants, the feed store, and the Lindale bank evidenced by the checks and the indorsements thereon, and so recover back from the bank money the merchants paid to the feed store.

The judgment will be reversed so far as it denied plaintiff in error a recovery against

the Lindale bank of the amount of the draft sued upon and awarded defendant in error Yarbrough a recovery of anything, and judgment will be here rendered in plaintiff in error's favor against the Lindale bank for the amount of the draft. The judgment will be affirmed so far as it was in favor of the Dallas bank.